NOTICE
Decision filed 02/09/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 230745-U

NO. 5-23-0745

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* JACARI L., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Champaign County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 18-JA-86 |
| | ) | |
| Jacirbi L., | ) | Honorable |
| | ) | Matthew D. Lee, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Justices Moore and Boie concurred in the judgment.

**ORDER**

¶ 1  *Held:*  Where respondent failed to address her mental health issues, voluntarily moved away from the area, and seldom visited her son, there is no reasonably meritorious argument that the circuit court erred in finding her an unfit parent and terminating her parental rights. As any argument to the contrary would be frivolous, we grant respondent's appointed appellate counsel leave to withdraw and affirm the circuit court's judgment.

¶ 2  Respondent, Jacirbi L., appeals the circuit court's orders finding her an unfit parent and terminating her rights to her son, Jacari L. Her appointed appellate counsel has concluded that there is no reasonably meritorious argument that the circuit court erred in either respect. Accordingly, he has filed a motion for leave to withdraw as counsel and an accompanying memorandum. See *Anders v. California*, 386 U.S. 738 (1967). Counsel has notified respondent of

1

his motion, and this court has given her ample opportunity to respond. However, she has not done so. After reviewing the record on appeal and counsel's motion and supporting memorandum, we agree that there is no issue that could support an appeal. Accordingly, we grant the motion to withdraw and affirm the circuit court's orders.

¶ 3                                    BACKGROUND

¶ 4     The State took Jacari into protective custody following an incident at Carle Hospital. On December 3, 2018, he was admitted with difficulty breathing. A nurse entered his room to find that respondent had removed his oxygen supply. She later resisted medical treatment for him and attempted to remove him from the hospital against medical advice. When she became physically aggressive toward staff members, police were called. They arrested respondent and Jacari was taken into protective custody.

¶ 5     At a subsequent court hearing, respondent stipulated to probable cause that Jacari was neglected and an immediate and urgent necessity existed to take him into protective custody. Accordingly, the circuit court granted temporary custody to the Department of Children and Family Services (DCFS).

¶ 6     Following an adjudicatory hearing in February 2019, the court noted that Jacari had recurring respiratory problems. When he was admitted to Carle, oxygen was the indicated treatment for his specific condition. However, respondent preferred other treatments, interfered with efforts to keep the oxygen supply connected, and tried to remove him from the hospital. The court found that respondent's "lack of understanding of Jacari's medical needs, and willingness to forcefully remove him from necessary medical care to impose her incorrect and ineffective idea of proper care upon him, place him in immediate danger due to medical neglect." The court found

2

respondent unfit to parent, noting that longstanding mental health issues, which she was not managing, prevented her from providing Jacari a safe home.

¶ 7    Following numerous case reviews over the succeeding four years, the State, on April 28, 2023, petitioned to find respondent unfit and to terminate her parental rights to Jacari.[1] The State alleged that respondent was unfit for failing, between July 28, 2022, and April 28, 2023, to make reasonable efforts to correct the conditions that were the basis for Jacari's removal, to make reasonable progress toward his return, and to maintain a reasonable degree of interest, concern, or responsibility for his welfare.

¶ 8    At a hearing, which respondent did not attend, the parties stipulated to permanency reports dated January 13 and April 18, 2023. According to the first such report, respondent was then living in suburban Chicago and was pregnant. She was not getting consistent prenatal care. She understood that DCFS might take the newborn and, in that event, wanted the baby placed with her cousin, Cassie Stewart. She had been referred to parenting classes in January 2019. She completed the classes, but the provider reported she did not seem to have gained much knowledge. Respondent volunteered to take another course but did not complete it. She had also been referred to individual counseling with Kathleen Peters, of the Center for Youth and Family Solutions (CYFS), in May 2020. She participated irregularly until October when she was discharged for poor attendance.

¶ 9    Respondent moved to Chicago in May 2022, and had not established a psychiatric care provider there. Following the move, she had been hospitalized three times for psychiatric reasons.

---

[1]Respondent's other son, Jacai, who has a different father than Jacari, was also a party to the proceedings for a time. However, the court ultimately found that Jacai's father, Arrion G., was fit to have custody of him and dissolved the guardianship. Consequently, neither Jacai nor Arrion G. is a party to this appeal.

After the third incident, she was referred to a therapist and psychiatrist by a hospital provider, but she had not followed through with either.

¶ 10    Respondent was also referred to Dr. Judy Osgood for a parenting capacity assessment, which was completed in October 2021. The evaluation revealed significant concerns about respondent's ability to safely care for children. Osgood concluded that her two special-needs children "need to be considered at an extremely high risk of harm if returned to [her] care." Due to respondent's "failure to benefit from 3 years of intensive treatment and services" and her "failure to identify any meaningful treatment goals or needed changes in her parenting skills, there is no indication additional recommendations could increase the likelihood for successful reunification/future parenting."

¶ 11    Osgood further recommended that visits with the children remain supervised, with appropriate interventions and coaching if necessary to ensure their safety. She also recommended random drug tests and access to community resources directed toward adults with chronic mental illness. Respondent was also referred to anger management classes, which she eventually completed.

¶ 12    During the current reporting period, respondent did not appear for any of 13 scheduled drug screens. She remained unemployed, although she had reportedly applied to several prospective employers.

¶ 13    Jacari L. had been placed in a traditional foster home in Foosland since September 11, 2019. He had "complex medical and developmental needs," which were being well managed. His foster parents provided him with a stable, supporting, loving home in which he appeared happy. He was in first grade, where he had individualized education program for his delays in speech and fine motor skills and for autism. He was also receiving speech and occupational therapy and

4

showing improvement. He enjoyed school and got along well with others. He was up to date on necessary medical care. His foster parents were willing to adopt him.

¶ 14 Respondent's visitation with Jacari was supervised. During the current reporting period, two visits had been scheduled. Respondent attended one but canceled another, claiming that she was not feeling well.

¶ 15 As of the second permanency report, Jacari remained in the Foosland foster home, where he was doing well. Because of the progress he was making, he no longer required one-on-one aid, and occupational therapy had been stepped down to "as needed." Meanwhile, he was excelling in school. Respondent remained in the same apartment in Chicago and had found temporary employment at a clothing shop. On March 23, she gave birth to a girl and entered into a one-year guardianship agreement with Stewart.

¶ 16 The status of respondent's psychiatric services remained unchanged. Since the preceding review, she had failed to appear for all six scheduled drug screens. The seven most recently scheduled visits had been canceled for various reasons.

¶ 17 The court found that the State had proved all three counts. It noted that respondent's mental health struggles were the basis for Jacari's removal. The court observed that, during the relevant nine-month period, respondent consciously chose to relocate to Chicago, for no stated reason, while Jacari remained in Champaign County. Respondent also failed to obtain psychiatric care, although she had been referred for it. Thereafter, she had been hospitalized three times for psychiatric reasons, indicating continuing serious mental health problems. Consequently, the court found the State had proved the "reasonable efforts" count.

¶ 18 As for the reasonable progress count, the court again noted her failure to attend counseling and psychiatric services, and that she attended only one visit during the nine-month period. Thus,

5

the State proved that count, too. The court further found that the lack of visits also demonstrated respondent's lack of interest, concern, and responsibility.

¶ 19 At the best interests hearing, which respondent did not attend, the court considered reports filed by CYFS and CASA. Based on respondent's recent history as described above, the reports recommended that her parental rights be terminated so that Jacari could be adopted.

¶ 20 The court noted Jacari's remarkable progress while in the foster home and found that respondent's inability to parent continued. Accordingly, it terminated respondent's parental rights. Respondent timely appealed.

¶ 21                                  ANALYSIS

¶ 22 Appointed appellate counsel concludes that there is no reasonably meritorious argument that the circuit court erred in finding respondent unfit and terminating her parental rights. We agree.

¶ 23 The Juvenile Court Act of 1987 delineates a two-step process to terminate parental rights involuntarily. 705 ILCS 405/2-29(1) (West 2022). The State must first establish, by clear and convincing evidence, that the parent is an unfit person under one or more of the grounds enumerated in section 1(D) of the Adoption Act (750 ILS 50/1(D) (West 2022)). *In re Gwynne P.*, 215 Ill. 2d 340, 349 (2005). The State need prove only one ground of unfitness to find a parent unfit. *In re J.A.*, 316 Ill. App. 3d 553, 564 (2000). Such a finding will not be disturbed on appeal unless it is against the manifest weight of the evidence. *In re M.I.*, 2016 IL 120232, ¶ 21.

¶ 24 Here, the circuit court reasonably found that respondent's voluntarily moving to Chicago—for no stated reason—failure to deal with the mental health concerns that were the basis of Jacari's removal, and infrequent visitation proved the State's allegations of lack of reasonable efforts, reasonable progress, and interest, concern, and responsibility.

6

¶ 25    The primary issue throughout the proceedings was respondent's mental health, which caused her to try to remove Jacari from the hospital where he was being treated for a medical emergency. Despite being referred for mental health services, respondent apparently never followed up.

¶ 26    Moreover, respondent seldom visited Jacari, attending only one of eight scheduled visits. While the distance undoubtedly was a barrier to attending visits, as the court noted, this condition was self-created, when respondent moved to Chicago. We note that respondent did not even attend the fitness and best interests hearings despite having notice of them. In light of these facts, we cannot say that the court's decision was against the manifest weight of the evidence.

¶ 27    Although respondent completed some tasks such as finishing a parenting class, the evaluator concluded that she did not really learn anything. Osgood found that the children would be at a high risk of harm if returned to her. She found that, given respondent's "failure to benefit from 3 years of intensive treatment and services" and her "failure to identify any meaningful treatment goals or needed changes in her parenting skills," additional services were unlikely to lead to a successful reunification with her children.

¶ 28    Counsel further concludes that there is no reasonably meritorious argument that the circuit court erred in finding that terminating respondent's parental rights was in the children's best interests. Once the court determines that a parent is unfit, the court must decide whether it is in the minor's best interests to terminate his or her parental rights. 705 ILCS 405/2-29(2) (West 2022). At this stage, "the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *In re D.T.*, 212 Ill. 2d 347, 364 (2004). The State must prove, by a preponderance of the evidence, that the minor's best interests justify termination

7

of the parent's rights. *Id.* We will not reverse such a finding unless it is against the manifest weight of the evidence. *In re M.F.*, 326 Ill. App. 3d 1110, 1116 (2002).

¶ 29   Here, as noted, the evidence showed that respondent had failed to make progress with longstanding issues that placed Jacari at risk. Meanwhile, he was making "remarkable" progress in his foster home despite numerous challenges. Both agencies recommended terminating respondent's rights and allowing him to be adopted. His foster parents were willing to do so. There was essentially no contrary evidence. Under these circumstances, the court's finding that termination of parental rights was in Jacari's best interests was not against the manifest weight of the evidence.

¶ 30                                    CONCLUSION

¶ 31   As this appeal presents no issue of arguable merit, we grant appointed appellate counsel leave to withdraw and affirm the circuit court's judgment.

¶ 32   Motion granted; judgment affirmed.